BROWN & BROWN OF TEXAS, INC.
f/k/a Poe & Brown of Texas, Inc. and
Transcontinental Insurance Company,
Appellants,

v.

OMNI METALS, INC., Appellee.

No. 01–05–01190–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 25, 2010.

Rehearing Overruled May 5, 2010.

Henry S. Platts Jr., Jeffrey Parsons, Kristen Werner Kelly, Beirne, Maynard & Parsons, LLP, Houston, TX, Russell J. Bowman, Bowman & Stella, P.C., Dallas, TX, for Appellants.

Mark C. Harwell, Cotham, Harwell & Evans, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and NUCHIA.*

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

On March 20, 2008, a panel of this Court reversed the trial court's judgment and rendered judgment that appellee Omni Metals, Inc. take nothing by its claims. Omni did not file a motion for rehearing, but instead filed a motion for en banc reconsideration. We treated the motion for en banc reconsideration as a motion for rehearing, granted rehearing, and withdrew the March 20, 2008 opinion and judgment and issued our December 17, 2009 opinion and judgment in their place. Appellants Brown & Brown of Texas and Transcontinental Insurance Company filed motions for rehearing and rehearing en banc. We now grant appellants' motions for rehearing, withdraw our December 17, 2009 opinion and judgment, and issue this opinion and judgment in their place, clarifying our December 17, 2009 opinion. Thus, the appellants' motions for en banc reconsideration are rendered moot and are dismissed. *See Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 41 & n. 4 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) (supp. op. on rehearing). We modify the judgment of the trial court and affirm as modified.

This case is on appeal from a trial court judgment in favor of Omni, a buyer and seller of steel coils. Port Metal Processing, Inc. (Port Metal) stored steel belonging to Omni, processed that steel into coils, and temporarily stored the finished coils for Omni. Port Metal purchased insurance from appellant Transcontinental Insurance Company (Transcontinental), originally through the Russell Lee Jacobe Insurance Agency (Jacobe). Jacobe was acquired on November 1, 1994 by Poe & Brown of Texas, Inc. (Poe & Brown), which is now known as appellant Brown & Brown of Texas, Inc. (Brown & Brown).

The underlying proceeding on which this action is based is a suit for damages arising from a fire that occurred on December 5, 1995 damaging Omni's steel stored in a facility operated by Port Metal. The trial

---

* Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on February 13, 2007.

court granted Poe & Brown and Transcontinental summary judgment on Omni's negligent misrepresentation and DTPA claims arising out of oral and written representations made by Poe & Brown, Transcontinental's local agent, to Omni and Port Metal, regarding Port Metal's bailee insurance coverage for Omni's steel stored at Port Metal. *See Omni Metals, Inc. v. Poe & Brown of Texas, Inc.*, No. 14–00–01081–CV, 2002 WL 1331720 (Tex. App.-Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication). The Fourteenth Court of Appeals reversed the summary judgment and remanded the case to the trial court.

The case was tried against Brown & Brown, Poe & Brown's successor, and Transcontinental before a jury beginning on October 11, 2005. It was submitted to the jury on theories of negligent misrepresentation and unfair or deceptive acts or practices under former article 21.21 section 16 of the Texas Insurance Code and section 17.46(b) of the Texas Deceptive Trade Practices Act (DTPA). The trial court rendered judgment on the jury verdict in favor of Omni on November 28, 2005. Defendants Transcontinental and Brown & Brown timely appealed.

On appeal, Brown & Brown raises four issues. It contends that (1) the evidence is factually and legally insufficient to establish (a) that it made a negligent misrepresentation or engaged in unfair or deceptive acts under the DTPA, (b) that the representation caused Omni's damages, (c) that Omni justifiably relied on Poe & Brown's misrepresentations, and (d) that Poe & Brown acted knowingly; (2) the DTPA does not apply to Omni because Omni is not a consumer under the DTPA or an insured or third party beneficiary under Port Metal's Transcontinental insurance policy; (3) attorney's fees incurred in another lawsuit and awarded Omni in this

suit are not recoverable as damages; and (4) the trial court erred in not giving it a proper credit for a $1,660,000 settlement in the other lawsuit.

Transcontinental raises seven issues. It contends that (1) Transcontinental could not be liable for representations made by Poe & Brown (a) when Omni presented no evidence that any representation of Poe & Brown was made with the actual or apparent authority of Transcontinental and (b) when Omni failed to submit a separate issue in the charge on Brown & Brown's actual or apparent authority and obtain a jury finding; (2) the evidence establishes as a matter of law that Transcontinental is not liable for Poe & Brown's actions in sending certificates of insurance to Omni; (3) Omni's misrepresentation claim is not viable, as a matter of law, because (a) no one at Omni read the certificates of insurance, (b) the certificates disclaimed any representation regarding coverage, (c) a statement made by Poe & Brown to Port Metal's president, Blake McKnight, in 1993 regarding coverage of Omni's product was not made to Omni, and (d) Port Metal's president had no authority to act for Transcontinental in representing to Omni that its metal was covered by Port Metal's bailee policy; (4) Omni was not entitled to recover attorney's fees of $740,000 for pursuing a tort action against the starters of the fire; (5) the jury's award of additional damages of $1,080,000 awarded Omni on its DTPA claims against Transcontinental are erroneous because Transcontinental had no contact with Omni and there is no evidence Transcontinental knew of any wrongful act, as required for recovery of additional damages; (6) the trial court erred in not giving a $1,660,000 settlement credit to Transcontinental that Omni received from third parties; and (7) the trial court erred in not admitting evidence of a prior federal judgment in Transcontinental's favor. In its own issues (3) and (4),

Brown & Brown joins in and adopts Transcontinental's arguments and authorities with respect to issues (5) and (6).

We modify the judgment of the trial court and, as modified, affirm.

## PROCEDURAL HISTORY

Port Metal's warehouse burned down on December 5, 1995, and Omni lost $2,600,000 in steel stored at Port Metal. Transcontinental, Port Metal's insurer, denied coverage for damages to Omni's steel on the ground that Port Metal's "all risk" bailee policy was subject to an exclusion for goods stored at Port Metal for more than sixty days for which Port Metal received a storage fee. Omni paid storage fees to Port Metal. Omni filed suit against Port Metal and defendants it alleged were responsible for the fire, namely Electrical Wire & Cable Company, Inc., Electrical Redesign Company, Lighting Surplus, Harry Schubeck, Jr., and Textron, Inc. It subsequently added Poe & Brown, Port Metal's insurance agent, and Transcontinental, Port Metal's insurer. Omni settled separately with the original defendants for a total of $1,660,000. Omni spent $740,000 on attorney's fees that were not legally recoverable prior to settlement.

Omni's suit against Transcontinental and Poe & Brown was severed from the claims against the settling defendants. In the severed suit, Omni raised claims against Transcontinental and Poe & Brown for negligent misrepresentation and violations of section 17.46(b) of the DTPA[1] under former article 21.21, section 16 of the Texas Insurance Code.[2] Transcontinental and Poe & Brown successfully moved for summary judgment. Omni appealed the summary judgment to the Fourteenth Court of Appeals, which reversed the judgment by opinion entered June 13, 2002, and remanded the case for trial. *Omni Metals, Inc.*, 2002 WL 1331720. This appeal follows from the trial on remand from the Fourteenth Court of Appeals.

In the original appeal of this case prior to trial on remand, the Fourteenth Court of Appeals made a number of holdings pertinent to the instant appeal. It held that Poe & Brown voluntarily disclosed to Omni that Port Metal had bailee insurance which covered "all risks," and, therefore, that Poe & Brown had a duty to disclose the storage fee exclusion, of which it was aware but Omni was not. *Id.* at *3–4. The Court also held that a fact issue existed as to "whether [Poe & Brown] misrepresented coverage because, under the circumstances, the 'all risk' certificate of insurance was false and misleading." *Id.* at *4–5. The Court further held that a fact issue existed as to whether Poe & Brown could be held liable to Omni if it misrepresented coverage to Port Metal by telling Port Metal's president that the policy would cover "[p]roduct owned by my customers for processing in-located in my facility." *Id.* at *8.

The court also refused Poe & Brown's and Transcontinental's request that it hold

---

1. TEX. BUS. & COM CODE ANN. § 17.46(b) (Vernon Supp.2009).

2. The relevant insurance provisions at issue in this case are found in former article 21.21 of the Insurance Code. *See* Act of April 25, 1957, 55th Leg., R.S., ch. 198, 1957 Tex. Gen. Laws 401, 401, *amended by* Act of May 10, 1973, 63rd Leg., R.S., ch. 143, § 2, 1973 Tex. Gen. Laws 322, 335 *and* Act of June 8, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex. Gen.

Laws 26–27 (hereinafter "former TEX. INS.CODE art. 21.21"). The legislature has since repealed those provisions and enacted new provisions incorporating the content of the repealed provisions. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, §§ 2, 26(a)(1), 26(1)(10), 2003 Tex. Gen. Laws 3611, 3641, 4138 (current version at TEX. INS.CODE ANN. §§ 541.001–.454 (Vernon 2009)).

that disclaimers in certificates of insurance delivered to Omni prevented the creation of a false impression about coverage as a matter of law. *Id.* at *6. Rather, it held that, given the "all risk" designation in the certificate, "the disclaimers in the certificate present a conflicting fact that we must disregard in applying the summary judgment standard of review." *Id.* at *7. The court also rejected Poe & Brown's and Transcontinental's argument that it had no duty to disclose because it had no duty to explain policy exclusions to an insured. *Id.*

In addition, the court refused to hold that Omni could not sue on the basis of its reliance on misrepresentations made by Poe & Brown to Port Metal and repeated by Port Metal to Omni. *Id.* Observing that "[c]ertain persons, other than the direct recipient of a misrepresentation can sue for negligent misrepresentation," the Fourteenth Court held that the evidence raised a fact issue as to whether Poe & Brown misrepresented coverage to Port Metal. *Id.* at 7–8 (citing cases and RESTATEMENT (SECOND) OF TORTS § 552(2) (1977)). In response to Poe & Brown's argument that Omni had a duty to read the policy itself, the court held, "Omni's failure to read the policy does not support the granting of summary judgment." *Id.* at *8. In other words, the court held that Omni Metals had no legal duty to read the policy. The court further held that Omni was not prevented from bringing its DTPA claims through article 21.21 section 16(a) of the Insurance Code by lack of consumer status. *Id.* at *9.

The court refused to address Transcontinental's argument that Omni could not recover against Transcontinental and Poe & Brown attorney's fees of $740,000 it had incurred in pursuing a tort action against the third parties allegedly responsible for starting the fire because the issue was not included in the motion for summary judgment. *Id.* at *10. The court likewise refused to address the issue of Poe & Brown's actual or apparent authority to act as Transcontinental's agent because it was not presented in the motion for summary judgment. *Id.* The court remanded the case for trial. *Id.*

## THE TRIAL

The trial began on October 11, 2005. The evidence at trial comported with, and elaborated upon, the summary judgment evidence. It showed that Omni was a customer of Port Metal, a steel processing company; that Omni stored steel coils at the Port Metal warehouse; and that Port Metal charged Omni a storage fee on steel coils left at the warehouse longer than 60 days.

Blake McKnight, Port Metal's president, testified that he asked Danny Sparks, then an agent for Jacobe and later an agent for Poe & Brown, to insure the Port Metal warehouse and its inventory, including steel that Port Metal's customers were storing at the warehouse. However, the original policy, written in 1992, excluded from coverage property held in storage for which a storage charge was made, as did the 1993, 1994, and 1995 renewals. McKnight read the 1992 policy and asked Sparks about the exclusion for stored property. Sparks told him the exclusion did not apply to property stored like Omni's at Port Metal. McKnight testified that he did not read the 1995 insurance policy in effect at the time of the fire.

Sparks testified that, by June 1993, he knew the policy did not provide the coverage he promised because he knew Port Metal was charging a storage fee to its customers like Omni. However, he did not explain to McKnight, to Port Metal, or to any of Port Metal's customers that the insurance policy excluded the steel Port

Metal's customers stored at Port Metal. Sparks also knew, from at least June 28, 1993, that Port Metal received revenues from its customers of $6,000 a month for storage fees. He also knew that Port Metal relied upon him to obtain coverage for all of its customers' steel. Sparks testified that he made a mistake by selling a policy that did not provide coverage to all of Port Metal's customers because of the storage exclusion. He further testified that he had an obligation to find out whose steel was being stored, but that he never made such an inquiry. Nor did he ever inform either McKnight or Omni of the exclusion, despite knowing that there was a gap in the intended coverage and that he had a duty to inform McKnight of the exclusion.

Omni's president, Arthur Tomes, spoke on several occasions with Port Metal's president, McKnight, and inquired whether Omni's steel at Port Metal's warehouse was insured. McKnight assured him it was. Omni also requested and received certificates of insurance from Jacobe and later from Poe & Brown to document Port's Metal's insurance coverage for Omni's steel to provide to Omni's secured lender. Sparks delivered the certificates to Omni knowing that Omni wanted the certificates to make sure that all its steel at Port Metal was covered. The 1993 certificate sent by Sparks to Omni noted the $3,000,000 bailee liability policy issued by Transcontinental. It also contained the statement, typed by Sparks, that Port Metal's insurance coverage "INCLUDES PROPERTY OF OTHERS IN CUSTODY OF INSURED." Sparks admitted at trial that this was "untrue." In 1994 and 1995, Sparks delivered insurance certificates to Omni containing the representation that the insurance covered "All Risk." Brown & Brown's expert testified at trial that the certificates were "misleading." Each of the certificates contained the following disclaimer: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS ON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES DESCRIBED BELOW."

Tomes, Omni's president, testified at trial that he did not "personally read and review every single certificate of insurance that came across to Omni" and that he did not ask for or "actually receive the insurance policy rather than the certificate of insurance" because the company "would think that the certificate of insurance would be adequate to cover what we needed." He "just look[ed] at 'all risks.'" The certificates confirmed what McKnight had told him, and he saw nothing on the certificates that gave him any reason to doubt what McKnight had told him. The certificates were also reviewed by Debbie Hiner at Omni and then forwarded to Omni's secured lender as proof that the steel was insured. Tomes testified that "they were satisfied too."

On December 5, 1995, the warehouse caught fire and $2,600,000 million worth of Omni's steel was ruined. The same day, Sparks approached Port Metal's president, McKnight, and told him, "If anybody asks you, don't mention the word 'storage.'" Sparks also telephoned another of Omni's customers, Mike Lykos, and told him "please do not mention the word 'storage.'"

Following the trial, the jury found the following:

1. Transcontinental and Poe & Brown made negligent misrepresentations on which Omni justifiably relied.

2. Damages for the negligent misrepresentations of $704,267 (value of steel), $370,964.72 (expenses in-

curred in selling the steel), and $740,000 (attorney's fees incurred by Omni in the lawsuit against the parties who caused the fire).

3. Transcontinental and Poe & Brown engaged in an unfair or deceptive act that damaged Omni.

4. Damages for the unfair or deceptive act of $704,267 (value of steel), $370,964.72 (expenses incurred in selling the steel), and $740,000 (attorney's fees incurred by Omni in the lawsuit against the parties who caused the fire).

5. Transcontinental and Poe & Brown knowingly engaged in their conduct.

6. Treble damages for the knowing conduct of $1,620,000 for Poe & Brown and $1,080,000 for Transcontinental.

7. Attorney's fees of $161,050.07 (preparation and trial), $50,000.00 (appeal to court of appeals), and $25,000.00 (appeal to supreme court).

8. Transcontinental's and Poe & Brown's negligence caused the injury.

9. Transcontinental was 40% responsible and Poe & Brown 60% responsible.

The trial court entered judgment on the jury verdict on November 28, 2005. In the judgment, it also awarded Poe & Brown and Transcontinental a settlement credit against (1) the $704,267 awarded Omni by the jury for "the value of the loss less any amounts Omni received from the sale of the steel or from Transcontinental" and (2) the $370,964.72 awarded Omni by the jury for "reasonable and necessary expenses incurred in attempting to sell the steel"; and (3) $169,213.61 for prejudgment interest on the principal of (1) and (2) from December 13, 1996 through April 13, 1999. The total amount of the settlement credit was thus $1,244,445.33. The judgment ex-

pressly excluded from the settlement credit the $740,000 awarded Omni by the jury as economic damages for "the amount of reasonable and necessary attorneys' fees and expenses incurred by Omni in a previous suit where Omni was required to prosecute the previous suit as a consequence of Defendants' wrongful conduct."

The instant appeal follows from the trial court's November 28, 2005 judgment.

## DISCUSSION

### A. Law of the Case Doctrine

■■■■ Because this case comes to us on appeal after remand from reversal of summary judgment by the Fourteenth Court of Appeals, we consider, as a preliminary matter, the "law of the case" doctrine. That doctrine is defined as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Loram Maint., Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex.2006); *Yazdchi v. San Antonio Fed. Credit Union*, No. 01–07–00189–CV, 2009WL 417299, at *3–4 (Tex.App.-Houston [1st Dist.] Feb. 19, 2009, no pet.) (not designated for publication). Under this doctrine, a court of appeals will ordinarily be bound by its initial decision if there is a subsequent appeal in the case. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex.2003). "By narrowing the issues in the successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision, judicial economy, and efficiency." *Id.* It is based on public policy and is aimed at bringing finality to litigation. *Id.* A decision rendered on an issue by an appellate court does not, however, absolutely bar reconsideration of the issue on a second appeal. *Id.* The application of the doctrine lies within the discretion of the court, depending on the circumstances of the case.

*Id.* It is an exception to the law of the case doctrine that the original decision was clearly erroneous. *Id.*

■ Here, the Fourteenth Court of Appeals issued a number of rulings on the legal issues presented by the parties' motions for summary judgment. The case was subsequently tried in reliance on those rulings and a verdict rendered from which this appeal is taken. Therefore we will follow the law of the case established by the Fourteenth Court of Appeals unless we conclude that, in some respect, it is clearly erroneous.

### B. Omni's Failure to Submit Issue and Obtain Jury Finding on Poe & Brown's Authority to Act as Transcontinental's Agent

In its first issue, Transcontinental argues that Omni failed to submit a separate issue on agency in the charge and failed to obtain a separate jury finding on Poe & Brown's actual or apparent authority to act as its agent.[3] Omni responds that Transcontinental failed to make any timely objection to the absence of a separate issue and therefore waived error and that, even if it had preserved error, the omitted finding was a finding as to an element of the ground of recovery on Omni's claims, was supported by evidence, and was therefore deemed found under Texas Rule of Civil Procedure 279.

The jury charge did not contain a separate issue on Poe & Brown's status as an agent of Transcontinental. However, the charge instructed the jury that "[a]uthority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party" and that, if so authorized, "that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized." It also instructed the jury that "[a]pparent authority exists if a party (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment...."

Jury questions 1 and 3 then asked the jurors whether "one or more of the Defendants made a negligent misrepresentation on which Omni Metals, Inc. justifiably relied" or "engage[d] in any unfair or deceptive act or practice that caused damages to Omni Metals." The questions asked the jurors to respond separately for Poe & Brown and for Transcontinental. The damages questions similarly requested separate answers for each defendant. Transcontinental did not object to the instructions, and it did not object to the failure to submit a separate agency question. The judgment awarded actual damages, attorney's fees, and costs jointly and severally against Poe & Brown and Transcontinental. It also awarded additional damages of $1,620,000 against Brown & Brown f/k/a Poe & Brown and of $1,080,000 against Transcontinental.

#### 1. Waiver

Texas Rule of Civil Procedure 274 requires that "[a] party objecting to a charge must point out distinctively the objectionable matter.... Any complaint as to a question, definition, or instruction ... is waived unless specifically included in the

---

**3.** This issue was raised by Transcontinental in its briefing on appeal in *Omni Metals v. Poe & Brown,* but it was not addressed by the Fourteenth Court of Appeals because it was not presented in the motion for summary judgment. *Omni Metals, Inc. v. Poe & Brown of Texas, Inc.,* No. 14–00–01081–CV, 2002 WL 1331720, at *10 (Tex.App.-Houston [14th Dist.] June 13, 2002, pet. denied) (not designated for publication).

objections." TEX.R. CIV. P. 274; *see also Pitman v. Lightfoot*, 937 S.W.2d 496, 520 (Tex.App.-San Antonio 1996, writ denied) (holding that by failing to challenge court's agency instruction on actual and apparent authority, appellants waived any complaint on appeal regarding implied finding of agency relationship); *Shandee Corp. v. Kemper Group*, 880 S.W.2d 409, 412 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (holding that appellant waived complaint regarding agent's authority as imputed by Texas Insurance Code because he "did not object to the instructions on the ground that they did not include a definition of the statutory agency requirements").

■ Because there was no objection to the charge as submitted, we hold that Transcontinental failed to preserve error with respect to the inclusion of an instruction on actual and apparent authority in the jury charge and that its complaint is waived. Even if the issue were not waived, however, we would not find error.

**2. Omission of an Element of the Charge**

Texas Rule of Civil Procedure 279, governing omissions from the charge, provides, in relevant part:

> Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party,

> may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. . . .

TEX.R. CIV. P. 279.

■ Under Rule 279, "[w]hen a question is omitted which constitutes only a part of a ground of recovery, and other questions referable to that ground are submitted and answered, the omitted elements are deemed found in support of the judgment if no objection is made and they are supported by some evidence." *Ins. Co. of N. Am. v. Morris*, 928 S.W.2d 133, 143 (Tex. App.-Houston [14th Dist.] 1996), *rev'd on other grounds*, 981 S.W.2d 667 (Tex.1998) (deeming apparent authority of surety to make representations about quality of partnership investments found by acts of participation, knowledge, or acquiescence by principal); *see also Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex.1990) (stating that when "issues are omitted which constitute only a part of a complete and independent ground and other issues necessarily referable to that ground are submitted and answered, the omitted elements are deemed found in support of the judgment if no objection is made and they are supported by some evidence"); *Lexington Ins. Co. v. Buckingham Gate, Ltd.*, 993 S.W.2d 185, 197–98 (Tex.App.-Corpus Christi 1999, pet. denied).

■ Here, the actual or apparent authority of Poe & Brown to act as the agent of Transcontinental is one of the elements of a finding of Transcontinental's liability for negligent misrepresentation and deceptive trade practices under the DTPA and the Insurance Code. We hold that, by

Transcontinental's failure to object to the omission of a jury question on Poe & Brown's actual or apparent authority to act as an agent of Transcontinental in making representations about coverage to clients and third parties, and by the submission of evidence that Poe & Brown made representations regarding Port Metal's bailee policy to Port Metal and to Omni, Poe & Brown's status as an agent of Transcontinental is deemed found. *See* TEX.R. CIV. P. 279.

We overrule Transcontinental's first issue.

### C. Poe & Brown's Authority to Act as Transcontinental's Agent

In its second issue, Transcontinental argues that the evidence was both legally and factually insufficient to support the jury's answers to questions number 1, 2, 8, and 9, finding Transcontinental liable for misrepresentation and violations of the DTPA. It argues that even if Poe & Brown's agency status is deemed found, Poe & Brown was a soliciting agent and that a soliciting agent "does not have authority to alter the policy via representations, and thus, the insurer has no liability as a matter of law where the agent issues a certificate of insurance that misstates coverage."

### 1. Standard of Review of Legal and Factual Sufficiency of the Evidence

In a legal sufficiency, or "no-evidence" review, we determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In conducting this review, we credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. We must sustain a no-evidence contention only if (1) the record reveals a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810; *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). When reviewing a no-evidence point of error, "all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Merrell Dow,* 953 S.W.2d at 711. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). In reviewing a challenge to the factual sufficiency of the evidence, we "must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Arias v. Brookstone, L.P.,* 265 S.W.3d 459, 468 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986)).

The jury is the sole judge of witnesses' credibility; it may choose to believe one witness over another, and a reviewing court cannot impose its own opinion to the contrary. *Wilson,* 168 S.W.3d at 819; *Arias,* 265 S.W.3d at 468. Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict if reasonable human be-

ings could do so. *Wilson,* 168 S.W.3d at 819; *Arias,* 265 S.W.3d at 468.

### 2. Evidence of Agency

 It is established law that an insurance company is generally liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority. This rule is based on notions of fairness: "since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions."

*Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 98–99 (Tex.1994) (citations omitted); *Lexington Ins. Co. v. Buckingham Gate, Ltd.,* 993 S.W.2d 185, 197 (Tex.App.-Corpus Christi 1999, pet. denied). A local recording agent is "a person or firm engaged in soliciting and writing insurance, being authorized by an insurance company . . . to solicit business and write, sign, execute and deliver policies of insurance, and to bind companies on insurance risks." *Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 692 (Tex.1979) (citing Act of May 23, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 1067, *repealed by* Act of May, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 3641 ("former Tex. Ins.Code art. 21.14, § 2")); *Lexington Ins.,* 993 S.W.2d at 198. By necessary implication, the local recording agent of an insurer has the authority to represent the coverage afforded by the policies it sells. *Royal Globe,* 577 S.W.2d at 694. "If [the] representations [are] false . . . under the explicit language of Section 16, Article 21.21 [of the Insurance Code] and Section 17.46(b)(12) of the DTPA, his actions constitute[ ] a deceptive act or practice for which his principal is accountable." *Id.* However, a soliciting agent is someone "who does not sign and

execute policies of insurance, and who does not maintain company records of such transactions." *Maccabees Mut. Life Ins. Co. v. McNiel,* 836 S.W.2d 229, 232 (Tex. App.-Dallas 1992, no writ) (citing former Tex. Ins.Code art. 21.14). "It is the settled law of this State that a soliciting agent of an insurance company has no power or authority to make a contract on behalf of the company or to waive the terms of the policy." *Int'l Sec. Life Ins. Co. v. Finck,* 496 S.W.2d 544, 546 (Tex.1973); *Lexington Ins.,* 993 S.W.2d at 199.

 Whether an agency relationship exists is usually a question of fact, and circumstantial evidence may be used to establish agency and the extent of the agent's authority. *Pitman,* 937 S.W.2d at 521. To determine whether an agent had apparent authority we look to the acts of the principal "to see if those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority he purported to exercise." *Shandee,* 880 S.W.2d at 412 (quoting *Guthrie v. Republic Nat'l Ins. Co.,* 682 S.W.2d 634, 637 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

 Transcontinental argues that Poe & Brown was a soliciting agent without power to make a contract on behalf of Transcontinental. However, the record reflects that Poe & Brown was Transcontinental's local recording agent. The High Performance Agency Agreement (the Agreement) between Transcontinental and Poe & Brown gave Poe & Brown explicit authority "[t]o bind, execute and issue the kinds of insurance contracts and bonds to which this Agreement applies . . . ." In addition, both Robert Pryor, Transcontinental's "Authorized Agent," and Sparks testified that Poe & Brown acted as Transcontinental's agent. The Agreement expressly grants Poe & Brown

the authority "[t]o countersign insurance contracts, bonds, certificates and endorsements." Moreover, Transcontinental represented that Poe & Brown was its "authorized agent" on the insurance policy issued to Port Metal. Likewise, the certificates issued expressly represented that Pryor was Transcontinental's "authorized representative." Transcontinental presented no rebuttal evidence.

Reviewing the record evidence in the light most favorable to Omni and indulging every reasonable inference in its favor, we hold that the evidence is legally sufficient to show that Poe & Brown was Transcontinental's local recording agent and that it therefore had the actual authority to sell Transcontinental insurance policies. We further hold that Transcontinental knowingly permitted Poe & Brown and Poe & Brown's agents "to hold [themselves] out as having authority" to provide certificates of insurance for Transcontinental insurance products to its insureds and third parties and to make representations about the scope of insurance coverage to them or, at the very least, that Transcontinental "bestow[ed] on [Poe & Brown] such indications of authority" with respect to such actions that would "lead a reasonably prudent person to rely on the apparent existence of authority to his detriment." *See Merrell Dow*, 953 S.W.2d at 711.

Considering and weighing all the evidence, we hold that the implied finding that Poe & Brown was Transcontinental's local recording agent with the authority to provide certificates of insurance and to make representations about the scope of insurance coverage is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Arias*, 265 S.W.3d at 468. We hold, therefore, that the evidence is legally and factually sufficient to show that Poe & Brown was Transcontinental's recording agent and

that it had the actual authority to provide certificates of insurance to its insureds and third parties and to make representations about Port Metal's insurance coverage as Transcontinental's agent.

We overrule Transcontinental's second issue.

### D. Omni's Standing to Maintain DTPA—Texas Insurance Code Claims

In its second issue, Brown & Brown argues that Omni lacked standing to bring a claim under the DTPA, specifically under subsections 17.46(b)(5) and (12) of the Texas Business and Commerce Code, under which Omni's DTPA claims were submitted to the jury in Question 3 of the jury charge. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(5), (12). Transcontinental argues that "Omni did not purchase or seek to purchase the policy" and therefore it is not a consumer under the DTPA, as required for standing under section 17.46(b)(5), nor does Omni fall within the scope of "persons" permitted to bring DTPA claims under section article 21.21 section 16(a). Brown & Brown acknowledges that consumer status is not required to bring a claim under subsection 17.46(b)(12).

Former article 21.21 section 16(a) of the Insurance Code provided that "*any person who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.*" Former TEX. INS.CODE art. 21.21, § 16(a), (b) (emphasis added). The section required that, "[t]o maintain an action for

a deceptive act or practice enumerated in Section 17.46(b), Business & Commerce Code, a person must show that the person has relied on the act or practice to the person's detriment." *Id.*[4]

Former article 21.21, section 4 included among the actions defined as unfair and deceptive acts or practices in the business of insurance the "[m]aking, issuing, circulating, or causing to be made, issued or circulated, any ... statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby ..., or using any name or title of any policy or class of policies misrepresenting the true nature thereof...." *Id.* § 4(1).

Section 17.46(b) of the Business and Commerce Code, which has not been recodified, provides, in relevant part:

> (b) ... the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

. . . .

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have ...

. . . .

> (12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[.]

TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.2009).

Section 17.50(a) of the DTPA, generally governing standing to bring a DTPA claim, provides:

> (a) A *consumer* may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

4. Former article 21.21 section 16(a) and (b) of the Insurance Code provided:

> Sec. 16. (a) any *person* who has sustained actual damages caused by another's engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices. To maintain an action for a deceptive act or practice enumerated in Section 17.46(b), Business & Commerce Code, a person must show that the person has relied on the act or practice to the person's detriment.
>
> (b) In a suit filed under this section, any plaintiff who prevails may obtain:
>
> (1) the amount of actual damages plus court costs and reasonable and necessary attorneys' fees. If the trier of fact finds that the defendant knowingly committed the acts complained of, the trier of fact may award not more than three times the amount of actual damages[.]

Former TEX. INS.CODE art. 21.21, § 16 (emphasis added).

Current section 541.151 of the Insurance Code similarly provides for a private cause of action for damages against an insurer for acts (1) defined by section 541.051 through section 541.061 of the Code as "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance" or (2) "specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment." TEX. INS.CODE ANN. § 541.151 (Vernon 2009). Under current section 541.051 of the Insurance Code, it is "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to ... make, issue, or circulate or cause to be made, issued, or circulated [a] ... statement misrepresenting with respect to a policy issued ... (A) the terms of the policy [or] (B) the benefits or advantages promised by the policy...." TEX. INS.CODE ANN. § 541.051 (Vernon 2009).

(1) the use employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment[.]

TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.2009) (emphasis added).

### 1. Omni's Consumer Status Under § 17.46(b)(5)

 Brown & Brown acknowledges that former article 21.21, section 16(a) of the Insurance Code did not incorporate the "consumer" standing requirement of section 17.50(a) of the DTPA unless the terms of the specific subsection under which a claim was pled required consumer status. *See* former TEX. INS.CODE art. 21.21, § 16(a). However, it argues that, in *Crown Life Insurance Co. v. Casteel,* the Texas Supreme Court held that a plaintiff must prove consumer status to bring a DTPA claim for the misrepresentation of "goods or services" under subsection 17.46(b)(5) and that Omni does not qualify as a consumer under the DTPA, i.e., as one "who seeks or acquires by purchase or lease, any goods or services." 22 S.W.3d 378, 386–87 (Tex.2000); *see* TEX. BUS. & COM.CODE ANN. § 17.45(4).

Our disposition of this issue is controlled by the law of the case. With respect to Omni's consumer status, the Fourteenth Court of Appeals stated in *Omni Metals:*

Omni brought its DTPA-based claims through article 21.21 of the Insurance Code. TEX. INS.CODE ANN. art. 21.21, § 16(a) (Vernon Supp.2002). Article 21.21, section 16(a), provides a cause of action for "unlawful deceptive trade practice[s]" defined under the laundry list of DTPA section 17.26(b). Article 21.21 does not require consumer status

to bring a DTPA-based cause of action. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 386 (Tex.2000). "But if the terms of a subsection of DTPA section 17.46(b) require consumer status, then consumer status is required to bring an action under article 32.21 for its violation." *Id.*

Omni pleaded violations of DTPA section 17.46(b)(5), (7), (12), and (23). By their terms, subsections (5), (7), and (23) require consumer status. *Id.* at 387. However, subsection (12) does not require consumer status. *Id.* Because consumer status is not required, the trial court erred in granting summary judgment on Omni's claim for violation of DTPA section 17.46(b)(12).

For the remaining DTPA provisions pled by Omni, we must determine whether consumer status requires direct purchase or lease of services from Poe & Brown. "Privity of contract with a defendant is not required for the plaintiff to be a consumer." *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996). Further, "[t]he consumer does not have to be the actual purchaser of the insurance in order to be classified as a consumer under the DTPA." *HOW Ins. Co. v. Patriot Fin. Serv. of Texas, Inc.,* 786 S.W.2d 533, 539 (Tex.App.-Austin 1990), *overruled on other grounds by Hines v. Hash,* 843 S.W.2d 464 (Tex. 1992). Accordingly, Omni is not denied consumer status by lack of privity with Poe & Brown. The trial court erred in granting summary judgment on this ground. . . .

2002 WL 1331720, at *9. We hold that the law of the case controls, and that Omni was entitled to consumer status under section 17.46(b)(5) and was not required to have consumer status under section 17.46(b)(12). *See id.*

## 2. Omni's Standing as a "Person" Under Former Article 21.21, Section 16(a)

 Brown & Brown also argues that Omni does not qualify as a "person" entitled to make a claim under former article 21.21 section 16(a) of the Insurance Code because Omni was not an "insured or third party beneficiary" of Port Metal's insurance policy. Brown & Brown acknowledges that "any person" damaged by another's engaging in a practice specifically enumerated in subsection 17.46(b) as a deceptive practice can bring a cause of action under that subsection. However, it argues that "[s]everal Texas courts ... have construed the term 'any person' as used in [former Texas Insurance Code article] 21.21 § 16(a) to mean only the insured or a third party beneficiary and have held that only an insured or third party beneficiary to a policy have standing to bring a [DTPA–Texas Insurance Code] claim."

It is well established that an insurer's misrepresentation regarding coverage is actionable under the Texas Insurance Code and the DTPA against agents and companies. *See Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243–44 (5th Cir.1990) (recognizing cause of action in Texas under article 21.21 against insurance carrier for false representation of coverage by insurance agent or company acting as ERISA plan agent); *Tenner v. Prudential Ins. Co.*, 872 F.Supp. 1571, 1573 (E.D.Tex.1994) (holding that action could be maintained under DTPA against insurance agent who allegedly acted outside scope of authority in misrepresenting that life policies were paid in full); *Royal Globe*, 577 S.W.2d at 693 (holding that misrepresentation by local recording agent as to coverage for damages for vandalism was actionable under DTPA and Insurance Code); *Celtic Life Ins. Co. v. Coats*, 831 S.W.2d 592, 596 (Tex.App.-Austin 1992)

(holding that misrepresentation as to psychiatric benefits by health insurance agent was actionable under article 21.21 of the Insurance Code and under DTPA), *aff'd as modified*, 885 S.W.2d 96 (Tex.1994); *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 912–13 (Tex.App.-Austin 1991, no writ) (holding that misrepresentation by local recording agent as to terms or benefits of homeowner's policy was unfair or deceptive act of principal); *Hermann Hosp. v. Nat'l Standard Ins. Co.*, 776 S.W.2d 249, 252–53 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (recognizing cause of action by hospital that treated insured under article 21.21, section 16 against insurers for allegedly misrepresenting that care and treatment fell within insurance coverage).

In *Aetna Cas. & Sur. Co. v. Marshall*, the Texas Supreme Court held that "[s]ection 16 of article 21.21 makes actionable any violation of [Texas Business and Commerce Code section] 17.46." 724 S.W.2d 770, 772 (Tex.1987) (holding that injured worker was entitled to recover treble damages against insurer in suit under article 21.21, section 16 for "representing to him that it would provide benefits by the agreement and then failing to do so"). The court made it clear that contractual privity or third party beneficiary status is not required for standing to bring claims against insurers for negligent misrepresentation and deceptive acts and practices under the Insurance Code and the DTPA. *Id.* It emphasized, "The question is simply whether Aetna engaged in conduct prohibited by section 17.46." *Id.*

This Court, following *Marshall*, has likewise held that privity of contract is not required for the imposition of a legal duty under article 21.21, section 16. *Hermann Hosp.*, 776 S.W.2d at 252 (recognizing cause of action by hospital that treated insured against insurers for allegedly mis-

representing that care and treatment fell within insurance coverage). We opined:

> Hermann Hospital is not suing on an insurance policy or for the wrongful denial of payment under [its patient's] worker's compensation insurance policy. It is suing for the damages it suffered by relying on the representations of coverage allegedly made by appellees. The supreme court has held that misrepresentations as to coverage and benefits are precisely the sort of conduct that give rise to a course of action under this section. *Aetna*, 724 S.W.2d at 772. We find that as a practical matter, the relationship between insurance companies and provides of health care is a direct one, with the health care provider acting in reliance on the representations of coverage made by the carriers. Hospitals and other health care providers must, and do, rely upon the insurance carriers representations of coverage in making their decision regarding admission of potential patients. If insurance coverage and benefits can be verified, the hospital will usually accept an assignment of benefits to insure it is paid for any services rendered. If insurance coverage and benefits cannot be verified, or if no coverage exists, the medical provider can then make alternative financial arrangements. To insulate the insurance carriers from liability leaves the medical care provider without recourse against the party causing its damage, if it acts in reliance on the representation of coverage. Had the insurance carrier not falsely or negligently provided information, appellant could have sought alternative means to ensure that it received payment for service before rendering them.

*Id.*

The exact same reasoning applies in this case, in which Omni sought a representation from Poe & Brown that its steel stored at Port Metal was insured for use in its business dealings, specifically including reassurance that its steel was protected by insurance and an assurance for its lender that the lender's collateral was protected. Had Poe & Brown not falsely represented that Omni's steel was covered by insurance, Omni could have protected its own interests and those of its lenders either by notifying Port Metal of the gap in the coverage extended by its bailee policy, so that Port Metal could cure the defect in coverage, or by procuring coverage of its own, and it would not have suffered the $3,000,000 loss it did suffer as a result of Poe & Brown's false assurance that "all risks" were covered by the policy.

Brown & Brown, however, cites to a string of authorities that it contends support its position, including *Tamez v. Certain Underwriters at Lloyd's, London*, 999 S.W.2d 12 (Tex.App.-Houston [14th Dist.] 1998, pet. denied); *Pineda v. PMI Mortgage Insurance Co.*, 843 S.W.2d 660 (Tex. App.-Corpus Christi 1992, writ denied); and *Chaffin v. Transamerica Insurance Co.*, 731 S.W.2d 728 (Tex.App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.).

We find these cases distinguishable. Each involved third party claimants under an insurance policy where the insurer had not made any representation directly to the third party upon which that party relied. *See Tamez*, 999 S.W.2d at 21–22 (denying standing to third-party claimants seeking to recover insurance proceeds under policy in which they were named neither as insured nor as beneficiary); *Pineda*, 843 S.W.2d at 672–73 (denying standing to mortgagors to bring bad faith, insurance code, and DTPA counterclaims against mortgage insurer when mortgagors' claims were "all premised on the spurious argument that they were 'insureds' under the PMI policy, in

privity with PMI, or were otherwise beneficiaries under the policy"); *Chaffin*, 731 S.W.2d at 731–32 (denying standing to homeowners claiming to be intended beneficiaries of subcontractor's insurance policy to bring fraud claim against insurance company for initial allegedly wrongful denial of coverage to subcontractor when there was no evidence that homeowners detrimentally relied on initial denial and homeowners ultimately received entire coverage of policy).

Unlike the plaintiffs in each of the foregoing cases, who brought claims of fraud and deceptive statements against insurers based on alleged misrepresentations and bad faith actions under a contract to which they were neither parties nor third party beneficiaries, Omni bases its claims upon false and misleading representations about a third party's insurance coverage made to it by the insurer's agent for its use in its business relations and upon which Omni detrimentally relied to its pecuniary loss. Omni thus falls squarely within the scope of persons entitled to sue for damages under the plain language of former article 21.21, section 16(a).

We overrule Brown & Brown's second issue.

### E. Negligent Misrepresentation and Unfair and Deceptive Acts

In its first issue, Brown & Brown argues that the evidence is legally and factually insufficient to establish that (a) Poe & Brown made a negligent misrepresentation and engaged in an unfair or deceptive act; (b) the representation caused Omni's damages; (c) Omni justifiably relied on Poe & Brown's misrepresentation; and (d) Poe & Brown acted knowingly.

In its third issue, Transcontinental similarly argues that Omni's misrepresentation claim is not viable because (a) no one at Omni read the certificates of insurance; (b) the certificates disclaimed any representation regarding coverage; (c) there is no evidence that Sparks's comment to Port Metal's president, McKnight, regarding the purpose of the storage charge exclusion was conveyed to anyone at Omni; and (d) McKnight had no authority to act for Transcontinental when he stated to Omni's president, Tomes, that Omni's stored steel was covered by Port Metal's bailee policy.

The third and fourth of Transcontinental's contentions—that Sparks's comment to Port Metal regarding the purpose of the storage charge exclusion and McKnight's statements to Tomes about coverage are not actionable against Transcontinental—are not supported by any argument or authority and are therefore waived. *See* Tex.R.App. P. 38.1(i). We address the remaining issues together as questions of the legal and factual sufficiency of the evidence to support Omni's negligent misrepresentation and deceptive trade practices claims.

### 1. Appellants' Negligent Misrepresentation

In the first part of its first issue, Brown & Brown argues that the evidence is legally and factually insufficient to support Omni's misrepresentation claim and its claims under former article 21.21 of the Texas Insurance Code and subsections 17.46(b)(5) and (12) of the DTPA. Specifically, it contends that the evidence is insufficient to support the jury's answers to Jury Question 1, in which the jury was asked whether Poe & Brown made a negligent misrepresentation, and Jury Question 3, in which the jury was asked whether Poe & Brown engaged "in any unfair or deceptive act or practice that caused damages to Omni Metals."

The charge defined "unfair or deceptive act or practice" to mean "1) representing that goods or services had or would have

characteristics that they did not have; or 2) representing that an agreement confers or involves rights that it did not have or involve." *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(5), (12).

### a. Appellants' Duty to Disclose

Brown & Brown argues that, of the four communications made to Omni concerning Port Metal's bailee insurance, three were made by Jacobe and only one by Poe & Brown, which subsequently acquired Jacobe and has itself since been acquired by Brown & Brown. Thus, it alleges, the only communication between Poe & Brown and Omni was the 1995 certificate of insurance delivered to Omni by Poe & Brown, which stated that Port Metal had a $3,000,000 "All Risk" "Bailee Liability" policy from Transcontinental. The bailee policy stated that the insurer, Transcontinental, "will pay for 'loss' . . . from any of the Covered Causes of Loss," which it defined as "RISKS OF DIRECT PHYSICAL 'LOSS' . . . except those causes of loss listed in the Exclusions." Brown & Brown argues that, "[a]s a matter of law, Poe & Brown's certificate of insurance does not make a false representation by accurately describing the bailee policy as an 'All Risk' policy." It refers us to *State Farm County Mutual Insurance Co. v. Moran,* 809 S.W.2d 613 (Tex.App.-Corpus Christi 1991, writ denied), and *North American Shipbuilding, Inc. v. Southern Marine & Aviation Underwriting, Inc.,* 930 S.W.2d 829 (Tex. App.-Houston [1st Dist.] 1996, no writ), as support for its argument.

 In *Omni Metals,* the Fourteenth Court of Appeals recited the elements of negligent misrepresentation, namely, that (1) a representation was made by a defendant in the course of business; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant failed to exercise reason-

able care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. 2002 WL 1331720, at *4; *see also Fed. Land Bank Ass'n v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991).

 In the prior appeal of this case, the Fourteenth Court of Appeals pointed out that a misrepresentation need not be an affirmative misrepresentation of fact. It stated, "Where there is a duty to speak, silence may be as misleading as a positive misrepresentation of existing facts." *Omni Metals,* 2002 WL 2331720, at *3 (quoting *Smith v. Nat'l Resort Cmty., Inc.,* 585 S.W.2d 655, 658 (Tex. 1979)). "Whether a duty to disclose exists is a question of law." *Id.* (citing *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001)). It further opined, "A duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Id.* (quoting *Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.-Houston [14th Dist.] 1997, pet. denied)).

Omni argued that Poe & Brown had a duty to disclose under *Hoggett* scenarios three and four. *Id.* at *4. The Fourteenth Court of Appeals agreed. *Id.* Omni had argued that Poe & Brown should have revealed the storage fee exclusion to correct impressions left by earlier certificates of insurance. *Id.* The court observed that the summary judgment evidence showed that the earliest certificate of insurance provided to Omni, for Port Metal's 1992–93 bailee policy, stated that "coverage includes property of others in custody of

insured." *Id.* Sparks, an insurance agent employed by Poe & Brown at the time of the fire loss, sent the certificate to Omni. *Id.* The summary judgment evidence showed that Sparks was aware of the storage fee exclusion by May of 1995. *Id.* He had been questioned about the storage fee exclusion by Port Metal's president, who told him Port Metal charged its customers a storage fee. *Id.* Nevertheless, Sparks did not disclose or provide additional information about the storage exclusion to Omni, even when he knew that Omni wanted to make sure that its property was covered by insurance purchased by Port Metal. *Id.* The court of appeals concluded, based on the summary judgment evidence, that "Sparks never corrected the impression conveyed by the 1992–93 policy, which was misleading given facts Sparks later learned." *Id.* It held that these circumstances created a fact issue as to whether appellees breached the duty prescribed under *Hoggett* scenario three. *Id.*

Omni also contended that, under the circumstances, the "all risk" certificate of insurance was a partial disclosure that conveyed a false impression and was therefore false under *Hoggett* scenario four. *Id.* The Fourteenth Court of Appeals again agreed. *Id.* It stated:

> We conclude that the evidence shows Poe & Brown understood it was answering Omni's question, "Is my property at Port Metal's facility covered?" At that time, Poe & Brown knew that Port Metal wanted to cover all property of its customers, was aware of the storage exclusion in the policy, and knew that Port Metal was charging its customers a storage fee. Despite this knowledge, the certificate of insurance was its only answer, a partial answer, to Omni's question. The certificate verified "all risk" bailee liability coverage with a $3,000,000 limit. In deposition, Poe & Brown's corporate representative admit-

ted that the term "all risk" did not really cover all possible risks and was possibly confusing. Thus, taken in the light most favorable to Omni, the all risk designation left a false impression under the circumstances.

*Id.* The court held, "Accordingly, there is a fact issue whether appellees met their duty under *Hoggett* scenario four." *Id.*

In its second issue in *Omni Metals,* Omni argued that a fact issue existed as to whether Poe & Brown had misrepresented coverage "because, under the circumstances, the 'all risk' certificate of insurance was false and misleading." *Id.* Poe & Brown made the same argument it makes here—that the certificate could not be considered a misrepresentation as a matter of law—and it relied upon the same authority, *North American Shipbuilding,* in support of its argument. *Id.* at *5. The Fourteenth Court of Appeals addressed Poe & Brown's argument at length and found *North American Shipbuilding* to be distinguishable "for several reasons." *Id.*

The court stated:

> First, the "all risks" representation in that case was found in the insurance *policy,* not just in two words on a certificate: "[this policy] insures against all risks of physical loss or damage to the Vessel ... except as herein provided." 930 S.W.2d at 831. Second, an exclusion for faulty workmanship was also fully delineated in the same document. In comparison, the certificate sent to Omni did not set for the storage exclusion. Third, the defendants in *N. Am. Shipbuilding* did not communicate the "all risk" policy clause in response to a specific inquiry. In contrast, Poe & Brown provided the "all risk" certificate in response to Omni's inquiry for confirmation that its steel was covered while at Port Metal. Fourth, in *N. Am. Ship-*

*building,* the insured failed to provide summary judgment proof that the insurer misrepresented the coverage to include faulty workmanship. The summary judgment proof here reveals that appellees told Port Metal that the storage exclusion did not apply.

*Id.* The court followed *Black v. Victoria Lloyds Insurance,* 797 S.W.2d 20 (Tex. 1990), in holding that a fact issue existed concerning misrepresentation of liability insurance coverage for personal use when an insurance company represents that "complete . . . insurance" has been provided when it has not. *Omni Metals,* 2002 WL 1331720, at *5; *see Black,* 797 S.W.2d at 24 (holding that insurance identification card provided to driver of leased vehicle by lessor's insurance company, which stated only that policy complied with "the compulsory auto laws of the State of Texas," but did not indicate that driver of leased vehicle did not have liability insurance coverage for personal use of vehicle, raised fact issue concerning misrepresentation of insurance coverage). The court concluded that Omni had raised a fact issue with respect to "whether [Poe & Brown] misrepresented the coverage afforded by the policy." *Omni Metals,* 2002 WL 1331720, at *5.

We adopt the Fourteenth Court of Appeals' statement of the law and apply the law of the case.

█ At trial, the jury was asked in Question 1 whether Poe & Brown made a negligent misrepresentation. In Question 3, it was asked whether Poe & Brown had engaged "in any unfair or deceptive act or practice that caused damages to Omni Metals." It responded 'yes' to both questions. We consider, therefore, whether the evidence is legally and factually sufficient to support the jury's findings.

The facts presented to the jury in this case comport with the facts presented to the Fourteenth Court of Appeals in the summary judgment evidence. *See id.* at *1–2. The unrebutted evidence shows that the bailee policies issued to Port Metals contained an exclusion for stored goods. Port Metals was concerned about insuring all of the steel stored with it. Its president, McKnight, read the 1992 policy and asked its insurance agent, Sparks, about the exclusion. Sparks assured him the exclusion did not apply to the steel stored at Port Metal, and McKnight conveyed this information to Omni. Indeed, Omni's president, Tomes, asked McKnight on several occasions whether Omni's steel stored at Port Metal's warehouse was insured and was assured by him that it was.

Omni's bank required that Omni request certificates of insurance from Jacobe and later Poe & Brown to document Port's Metal's coverage, and Omni did. Sparks delivered the certificates to Omni knowing that Omni wanted the certificates to provide to its secured lender to show that all of its steel at Port Metal was covered by insurance. Despite knowing that Port Metal relied upon him to obtain coverage for all of its customers' steel, as well as knowing, from at least June 28, 1993, that Port Metal received revenues from its customers of $6,000 a month for storage fees, and knowing, by at least July of 1993, that Port Metals' bailee policy excluded from coverage goods "for which a storage charge is made," Sparks did nothing to inform Port Metal or its customers of the exclusion. Rather, he typed into the 1993 certificate on Port Metal's $3,000,000 bailee policy that he delivered to Omni the statement that Port Metal's bailee policy "INCLUDES PROPERTY OF OTHERS IN CUSTODY OF INSURED," a statement Sparks admitted was "untrue." He then delivered two more "All Risk" certificates to Omni without mentioning the exclusion.

Considering the evidence in the light most favorable to the jury's verdict, we hold that the evidence would enable reasonable and fair-minded people to conclude that Poe & Brown, Transcontinental's agent, made a negligent misrepresentation. *Merrell Dow,* 953 S.W.2d at 711. There was no evidence that Poe & Brown did not make the representations complained of. Therefore, considering and weighing all the evidence neutrally, we hold that the jury's finding that Poe & Brown and Transcontinental made negligent misrepresentations is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Arias,* 265 S.W.3d at 468. We hold, therefore, that the evidence is both legally and factually sufficient to support the jury's finding that Poe & Brown and Transcontinental made negligent misrepresentations to Omni. We further hold that the evidence was both legally and factually sufficient to support the jury's finding that Poe & Brown, Transcontinental's agent, represented to Omni that Port Metal's bailee policy had a characteristic it did not have, namely the characteristic of covering Omni's steel coils stored at Port Metal, and that Poe & Brown and Transcontinental represented to Omni that the bailee policy conferred a right that it did not confer, namely the right to recover insurance proceeds for damage to Omni's steel stored at Port Metal.

We overrule the first part of Brown & Brown's first issue.

### b. *Justifiable Reliance and Causation*

In the second and third parts of its first issue, Brown & Brown argues that the evidence is legally and factually insufficient to establish that a representation by Poe & Brown caused Omni's damages. Brown & Brown contends that there is no evidence that Omni read Poe & Brown's 1995 certificate of insurance before the 1995 fire and that, as a matter of law, Omni Metals could not detrimentally rely on the term "all risk" in the certificate of insurance to mean that its steel coils were covered under Port Metal's bailee policy or that the policy would have "no conditions, no terms, no exclusions" limiting coverage. Transcontinental argues in the first and second parts of its third issue that no one at Omni read the certificates. Both Brown & Brown and Transcontinental also argue that the fact that the certificates contained a disclaimer is conclusive evidence of a lack of justifiable reliance.

"Under the DTPA, a consumer may bring an action when he has relied to his detriment on a false or misleading representation, and the reliance is a producing cause of damages." *Am. Home Shield, Inc. v. Kortz,* No. 01–99–00380–CV, 2000 WL 1262617, at *3 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd) (not designated for publication); *see also Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984). The plaintiff may recover either "the value of that which he has received" ("out of pocket" damages) or "the difference between the value as represented and the actual value received" ("benefit of the bargain" damages). *Am. Home Shield,* 2000 WL 1262617, at *3; *see also Leyendecker,* 683 S.W.2d at 373. Evidence that a misrepresentation as to the terms or benefits of coverage prevented an insured from taking steps to prevent a loss is sufficient to support a jury finding that the misrepresentation was a producing cause of damages. *Gros,* 818 S.W.2d at 914 (holding that evidence that insureds could have taken steps to prevent damage to their home caused by landslide, such as re-engineering retaining wall, had they known retaining wall failure would not be covered by homeowner's policy, was sufficient to support jury's finding that insur-

er's misrepresentations regarding coverage were producing cause of insureds' damage).

In addition, Texas has long recognized the tort of negligent misrepresentation as described in section 552 of the Restatement (Second) of Torts and its application to professionals. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex.1999). Section 552(1) provides:

> One who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information*, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* at 791 (emphasis added) (quoting RESTATEMENT (SECOND) OF TORTS § 552 (1977) and applying section to define scope of duty of attorney to non-client to whom he has made representation); *see Sloane*, 825 S.W.2d at 442 (applying section 552 to define scope of lender's duty); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 188 (Tex.1977) (holding that title insurer can be liable for fraud in misrepresenting state of title); *Great Am. Mortgage Investors v. Louisville Title Ins. Co.*, 597 S.W.2d 425, 430 (Tex.Civ.App.-Fort Worth 1980, writ ref'd n.r.e.) (applying tort of negligent misrepresentation to title insurer).

■■■ Under this law, "[i]t is well settled that even though one does not have a duty to act, if one acts voluntarily, he must do so with due care and is generally liable for negligence." *Great Am. Mortgage*, 597 S.W.2d at 430 (holding that title binder who had no duty to disclose existence of deed restriction but who "actually represented that no deed restrictions were

in existence ... is held to the standard of reasonable care and may under the proper circumstances be liable in tort for damages caused by a negligent misrepresentation"). In the context of title insurance, the law imposes a duty on the title insurer to know whether a statement he makes to the seller is true, and it holds him responsible for an affirmative representation that is the "producing cause" of damages to the party purchasing the insurance. *First Title Co. v. Garrett*, 860 S.W.2d 74, 76 (Tex.1993). Similarly, the theory of negligent misrepresentation permits plaintiffs who are not parties to a contract for the professional services of lawyers to recover from the contracting professionals in situations in which the attorney who provides the false information is aware of the non-client and intends that the non-client rely on the information. *McCamish*, 991 S.W.2d at 792.

■■■ However, liability is limited to the loss suffered

> (a) by the person or one of a limited group of persons for whose benefit and guidance [one] intends to supply the information or knows that the recipient intends to supply it; and (b) through *reliance* upon it in a transaction that [one] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Id.* at 794 (quoting RESTATEMENT (SECOND) OF TORTS § 552(2)) (emphasis added).

In determining whether the justifiable reliance element of negligent misrepresentation is met, the court must consider the nature of the relationship between the professional, his client, and the nonclient. *See McCamish*, 991 S.W.2d at 794. The professional must have invited reliance. *See id.* (holding that attorney owes duty of care to nonclient only if attorney invites

reliance); *see also Sloane,* 825 S.W.2d at 442 (finding evidence sufficient to support borrowers' claim that bank has duty to use reasonable care whenever it provides information to its customers or potential customers which it breached when it allegedly encouraged borrowers to incur expenses in reliance on false information provided by bank in relation to their loan application).

■■■■■ The misrepresentation must have been the cause in fact of the plaintiff's damages. The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is the legal cause, including, *inter alia,* "pecuniary loss suffered ... as a consequence of the plaintiff's reliance on the misrepresentation." *Sloane,* 825 S.W.2d at 442 (quoting RESTATEMENT (SECOND) OF TORTS § 552B). The two elements of proximate cause are (1) that an omission or act was a substantial factor in bringing about the plaintiff's injury, without which no harm would have occurred, or cause in fact, and (2) that the actor would have anticipated the danger that his negligent act created for others, or foreseeability. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987); *see also Havner v. E–Z Mart Stores,* 825 S.W.2d 456, 458–59 (Tex.1992). The act or omission need not be the sole cause of the plaintiff's harm, and causation need not be supported by direct evidence; circumstantial evidence and inferences therefrom are a sufficient basis for finding causation. *Havner,* 825 S.W.2d at 459.

*(1) Legal Sufficiency of the Evidence of Justifiable Reliance and Causation*

Brown & Brown argues that because Tomes, Omni's president, testified that he did not specifically recall reading the certificates of insurance, "the evidence is legally and factually insufficient to support the cause in fact and reliance elements of

Omni's claims." Brown & Brown also argues that "Omni could not have *justifiably* or *reasonably* relied on the term 'All Risk' to mean that all of its steel coils were covered under Port Metal's policy or that the policy would have 'no conditions, no terms, no exclusions' limiting coverage" because of the disclaimer in the certificate that "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS ON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES DESCRIBED BELOW." Transcontinental likewise argues that the fact that the certificates contain a disclaimer is conclusive evidence of a lack of justifiable reliance.

We construe Brown & Brown's and Transcontinental's argument to be that Omni could not justifiably rely on Poe & Brown's representation that Port Metal had an "all risk" bailee policy; rather, Omni was barred by the disclaimer as a matter of law from relying on appellants' representation of coverage of "all risks" in the certificate of insurance, and it had a legal duty to read the policy referenced in the certificate of insurance to determine the scope of any exclusions. Because Omni did not ask for and read the policy, the evidence was legally insufficient to support its negligent misrepresentation and DTPA claims under the Insurance Code.

■■■■ We hold that the law of the case again controls. In *Omni Metals,* in response to Omni's appeal of the summary judgment entered against it, Poe & Brown and Transcontinental argued, as they do here, that Omni had a duty to read the policy itself. Reversing the summary judgment, the Fourteenth Court of Appeals pointed out that "[c]ertain persons, other than the direct recipient of a misrep-

resentation, can sue for negligent misrepresentation." *Omni Metals*, 2002 WL 1331720, at *7 (citing RESTATEMENT (SECOND) OF TORTS § 552(2)) (describing persons who may sue for negligent misrepresentation as including person or persons "for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it" and "through reliance upon it in a transaction that [the defendant] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction"). The court also observed that, in the cases upon which Omni relied, "the failure to read the policy was no apparent bar to a claim for misrepresentation." *Id.* at *8 (citing *Lexington Ins. Co.*, 993 S.W.2d at 197–98 (stating that any misconduct by agent that is within actual or apparent scope of agent's authority and that insurer's recording agent's misrepresentation of coverage is considered that of insurer); *Black*, 797 S.W.2d at 24–25). It held, "Omni's failure to read the policy does not support the granting of summary judgment." *Omni Metals*, 2002 WL 1331720, at *8. In other words, the court held that Omni Metals had no legal duty to read the policy upon which judgment against it could be based.

The Fourteenth Court of Appeals specifically rejected the argument that the disclaimer on the certificate of insurance put Omni on notice that there could be exclusions that would prevent its stored steel from being covered by Port Metal's "all risk" bailee policy and that it placed on Omni a duty of due diligence to read the bailee policy to determine the extent of Port Metal's coverage. The court stated,

> [I]ssuance of a certificate of insurance [the 1993 certificate] without disclosure of additional information about the storage fee exclusion and issuance of another certificate [the 1995 certificate], coupled with the circumstances under which it was sent to Omni and the assurances of coverage to Port Metal, give rise to causes of action for misrepresentation. We reject appellees' arguments that, as a matter of law, issuance of an insurance certificate does not create a duty; presence of disclaimers precludes the creation of a false impression; no duty to disclose arises because there is no duty to explain policy exclusions to an insured; and the use of "all risk" cannot convey a false impression.

*Id.* at *7. Adopting the law of the case, we hold that Omni's negligent misrepresentation and DTPA claims were not barred as a matter of law by the failure of its president to read every word in the certificate of insurance or to request and read the policy to determine whether its steel was excluded from coverage.

Our conclusion is not changed by the cases relied upon by Brown & Brown to support its claim. In none of its cases was there a direct misrepresentation to the plaintiff or any evidence that the plaintiff received and relied upon a false or misleading representation. *See Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex.1998) (stating, "the record contains no evidence that [the plaintiff] was aware of the [representation] or that [the defendant] had communicated its content or existence to anyone outside of the company"); *Sw. Bell Tel. Co. v. Boyce Iron Works, Inc.*, 726 S.W.2d 182, 187 (Tex.App.-Austin 1987) (holding there was no proof that plaintiff had "even heard of any representations, much less misrepresentations"), *rev'd on other grounds*, 747 S.W.2d 785 (Tex.1988); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1155 (9th Cir.2005) (stating there was "no admissible evidence identifying what statements attributable to [the defendant] the decedent actually saw, heard, or read and relied upon").

Nor is our conclusion changed by Transcontinental's argument that, as a matter of law, reliance is never justified when a party receives a disclaimer. Rather, we agree with Omni's argument that all of the cases cited by Transcontinental on this point are factually distinguishable and inapplicable in that "they relate solely to binding contractually disclaimed reliance." *See Coastal Bank SSB v. Chase Bank of Texas, N.A.,* 135 S.W.3d 840, 844 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Bluebonnet Sav. Bank F.S.B. v. Grayridge Apt. Homes, Inc.,* 907 S.W.2d 904, 910 (Tex. App.-Houston [1st Dist.] 1995, writ denied); *Airborne Freight Corp. v. C.R. Lee Enters.,* 847 S.W.2d 289, 298 (Tex.App.-El Paso 1992, writ denied). Here there was no contract between Omni and Brown & Brown, and there was specifically no contractually binding agreement by Omni not to rely on the certificate provided to it for use in its business dealings. Rather, the certificate was delivered to Omni by Poe & Brown for the express purpose of conveying to Omni's lender the assurance that Omni's steel stored at Port Metal was insured and with Poe & Brown's knowledge that it would be so relied upon. Thus, Poe & Brown invited Omni's reliance on its representations. *See McCamish,* 991 S.W.2d at 794.

Moreover, Poe & Brown's delivery of the requested certificate to Omni and its failure to correct information regarding coverage that it knew to be incorrect caused Omni not to take other steps to assure the coverage of its steel stored at Port Metal. This is essentially the same scenario as in *Hermann Hospital,* in which we opined,

> To insulate the insurance carriers from liability leaves the [third-party plaintiff to whom coverage was misrepresented for use in its business dealings] without recourse against the party causing its damage, if it acts in reliance on the representation of coverage. Had the insurance carrier not falsely or negligently provided information, appellant could have sought alternative means to ensure that it received payment for service before rendering them.

776 S.W.2d at 252. We declined to find that such a suit was barred as a matter of law in *Hermann Hospital,* and we similarly decline to find that a suit for misrepresentation is barred in this case.

Finally, our holding that Omni justifiably relied on Poe & Brown's false representations and that those representations caused it pecuniary damages is not changed by Brown & Brown's and Transcontinental's reliance on new authority since *Omni Metals* was decided, namely the Southern District of Texas's construction of Texas law in *TIG Insurance Co. v. Sedgwick James,* 184 F.Supp.2d 591 (S.D.Tex.2001) (*Via Net I*), and the Texas Supreme Court's subsequent per curiam opinion in a companion case, *Via Net v. TIG Insurance Co.,* 211 S.W.3d 310 (Tex. 2006) (*Via Net II*).

In *Via Net I,* the named insured, Corporate Express, Inc., purchased two commercial general liability (CGL) insurance policies from Lumbermens Mutual Casualty Company for itself and its subsidiaries, Policies 300 00 and 300 01. 184 F.Supp.2d 591 at 594. The named insureds on Policy 362 00 were "U.S. Delivery Systems [USDS] and its subsidiaries, United Transnet, Inc. and its subsidiaries, and Corporate Express, Inc. [CEI] (the parent company of [USDS] and united Transnet)." *Id.* Policy 362 00 contained no provision for additional insured coverage. *Id.* Policy 300 01's named insured was CEI. While subsidiaries of CEI were included on Policy 300 01, which did provide for additional insureds, the policy specifically excluded Corporate Express Delivery Systems, Inc.

(CEDS) and its subsidiaries, which included USDS, whose Houston subsidiary was Via Net. *Id.* Via Net was thus insured only under Policy 300 00. *Id.*

One of Via Net's customers was Safety Lights Sales & Leasing, Inc. (Safety Lights). In March 1996, Safety Lights demanded that it be added as an additional insured to Via Net's insurance policy in order for Via Net to remain a vendor with Safety Lights. *See id.* As evidence that it had been added as an additional insured, Safety Lights requested a certificate of general and auto liability insurance from Via Net, and it further required that the certificate "evidence 'waiver of subrogation and additional insured in favor of Safety Lights Company.'" *Id.* at 594–95. CEDS's insurance agency, Sedgwick, issued a certificate to Safety Lights under Policy 362 00 listing Via Net and USDS as the insureds. *Id.* The certificate stated, *"Certificate holder is added as additional insured re: general liability." Id.* at 595. The certificate contained the same disclaimer as in this case. Safety Lights did not ask for or seek to read Policy 362 00 to which the certificate of insurance referred. *See id.* at 598. Policy 362 00 did not provide for additional insureds.

Subsequently, an employee of Via Net was injured while delivering a steel plate to Safety Lights. He sued Safety Lights under various theories, including violations of the Texas Insurance Code, the DTPA, negligence, misrepresentation and fraud, claiming that Lumbermens should provide

coverage under Policy 362 00. The United States District Court rejected Safety Light's claim that it was entitled to coverage under Policy 362 00. The court held that a "certificate of insurance will not suffice to create insurance coverage if such coverage is precluded by the terms of the policy." *Id.* at 597 (citing *Wann v. Metropolitan Life Ins. Co.,* 41 S.W.2d 50, 52 (Tex.Com.App.1931) for proposition that "certificate of insurance does 'not constitute the complete contract of insurance' and must be construed in connection with underlying insurance policy"). Observing that under Texas law, "[a]n insured has a duty to read the insurance policy and is charged with knowledge of its provisions," the court concluded that Safety Lights, claiming to be an additional insured under Policy 300 01, "should be held to the same obligation as a named insured to review a policy of insurance on which it seeks to rely, and its reliance solely on the agent's certificate of insurance is not reasonable under the circumstances presented by the admissible evidence." *Id.* at 603 (citing *Ruiz v. Gov't Emp. Ins. Co.,* 4 S.W.3d 838, 841 (Tex.App.-El Paso 1999, no pet.)). It concluded that Safety Lights' reliance upon the certificate of insurance to provide it additional insured status was not reasonable. *Id.* at 604.[5]

After its unsuccessful federal suit to recover as an additional insured under the Lumbermens policy, Safety Lights sued Via Net in Texas state court for breaching

---

**5.** With respect to Safety Lights' Insurance Code and DTPA claims, the court acknowledged that "Section 4 of Article 21.21 of the Texas Insurance Code and Section 17.46 of the DTPA prohibit the making of any statement misrepresenting the terms of any insurance policy." *TIG Ins. Co. v. Sedgwick James,* 184 F.Supp.2d 591, 604 (S.D.Tex.2001) (*Via Net I* ) (citing former TEX. INS CODE art. 21.21, § 4(1); TEX. BUS & COM.CODE ANN. § 17.46). But it held that Safety Lights' DTPA and Arti-

cle 21.21 claims failed as a matter of law because its damages and expenses related to its employee's personal injury suit were entirely borne by TIG, so that Safety Lights suffered no economic damages, and TIG brought suit "only under its rights of subrogation under the insurance policy it issued to Safety Lights," and, "a subrogee can have no greater rights than its subrogor," so that "TIG, as subrogee, cannot state a claim under the DTPA." *Id.* at 605.

its promise to provide additional insured coverage. *Via Net II*, 211 S.W.3d 310. The issue when the suit was eventually appealed to the Texas Supreme Court was whether the discovery rule applied to Safety Lights' suit, which arose less than four years after coverage was denied but more than four years after the promise to provide coverage was breached. *Id.* at 311–12. The court observed that Via Net's policy with Lumbermens "did not provide for additional-insured coverage and no endorsement adding it as an insured was ever issued." *Id.* at 312. It held that, as a contracting party, Safety Lights had a duty to use ordinary care for the protection of its own interests and to use due diligence to verify contract performance. *Id.* at 314. Because the breach would have been easily discoverable merely by Safety Lights' "asking [its] contract partner for information needed to verify contractual performance," the Texas Supreme Court held that, under the circumstances of the case, the discovery rule did not apply, although it might apply to contract cases under other circumstances. *Id.* at 314–15. The court commented in dicta, "Given the numerous limitations and exclusions that often encumber such policies, those who take such certificates at face value do so at their own risk." *Id.* at 314.

We decline to extend the reasoning in *Via Net I* and *Via Net II* regarding the due diligence obligations of a person claiming to be entitled to insurance proceeds as a party to an insurance contract to persons bringing claims under the Texas Insurance Code alleging negligent misrepresentation and violations under the DTPA based on false representations of the contents of insurance policies by insurance agents and companies upon which the plaintiff relied in its business dealings and which caused the plaintiff to suffer economic damages. In *Via Net I*, the relevant holding was that a party claiming to be entitled to insurance coverage as an additional insured under an insurance policy, and therefore claiming to be in contractual privity with the insurance company, cannot rely on a certificate of insurance to extend more coverage than is actually conveyed by the policy itself, any more than the named insured can. Rather, a party claiming to be an additional insured is held to the same burden as the named insured of reading the policy to ascertain its right to coverage. *See Via Net II*, 211 S.W.3d at 314. Here, under a far different set of circumstances, Omni was *not* an additional insured, but a *customer* of an insured, and the question is whether Omni could justifiably rely upon the affirmative misrepresentations of the insurance agent for a third party, Port Metal, that Port Metal was insured and, therefore, that Omni's steel was protected by Port Metal's insurance, which were made both orally and in certificates of insurance solicited and relied upon by Omni for use in its own business dealings.

It is well established that, unlike a party to an insurance contract claiming to be an insured and therefore entitled to recover insurance proceeds, a party to whom a third party's insurance agent has made misrepresentations regarding the extent of the third party's insurance coverage for use in the business dealings of the recipient has no duty of due diligence to seek out and read the third party's insurance policy and to verify its terms and conditions in order to maintain a suit for misrepresentation and deceptive acts and practices against the agent and his principal under the Insurance Code and the DTPA. *See Omni Metals*, 2002 WL 1331720, at *8 (holding that Omni's failure to read Port Metal's policy was no bar to claim for misrepresentation by Port Metal's insurance agent); *see also Royal Globe*, 577 S.W.2d at 693 (holding false representations of local recording agent

regarding coverage afforded by policy for vandalism actionable under former article 21.12, section 16 and DTPA section 17.46(b)(12)); *Celtic Life Ins. Co.*, 831 S.W.2d at 596 (holding misrepresentation by health insurance agent as to benefits actionable under article 21.21, section 16 and DTPA); *Gros*, 818 S.W.2d at 912–13 (same with respect to homeowner's policy); *Hermann Hosp.*, 776 S.W.2d at 253 (same with respect to representation to hospital regarding coverage of worker's compensation insurance policy). These cases stand in contrast to contract law, where it is equally well established that a contracting party has a duty of due diligence regarding formation and performance of the contract. *See Via Net II*, 211 S.W.3d at 314 (stating, "Due diligence may include asking a contract partner for information needed to verify contractual performance"); *Coastal Bank SSB*, 135 S.W.3d at 843 (holding that contract and circumstances surrounding its formation determine whether disclaimer of reliance in contract is binding and bars fraudulent inducement claim by party to contract).

The only requirement for a party seeking to hold liable the principal of an insurance agent who made a false representation about coverage is that the recipient look to the acts of the principal "to see if those acts would lead a reasonably prudent person using diligence and discretion to suppose that the agent had the authority he purported to exercise." *Shandee*, 880 S.W.2d at 412 (quoting *Guthrie v. Rep. Nat'l Ins. Co.*, 682 S.W.2d 634, 637 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.)). Here, there was nothing to indicate that Transcontinental had not authorized Poe & Brown to represent the extent of Port Metal's insurance coverage to Omni. And, as Transcontinental's recording agent, Poe & Brown did, in fact, have such authority. *See Royal Globe*, 577 S.W.2d at 694 (local recording agent of insurer has authority to represent coverage afforded by policies it sells). If representations about the extent of coverage by an authorized agent are false, "under the explicit language of Section 16, Article 21.21 and Section 17.46(b)(12) of the DTPA," those actions constitute a deceptive act or practice for which not only the agent but his principal is accountable. *See id.*

We hold that Omni had no legal duty to obtain and read Port Metal's bailee insurance policy or to verify its terms in order to maintain its suit for misrepresentation and violations of the DTPA under article 21.21 of the Insurance Code. We therefore address whether the evidence was factually sufficient under the circumstances of this case to show that Omni justifiably relied on Poe & Brown's misrepresentations.

### (2) Factual Sufficiency of the Evidence of Reliance and Causation

Here, at Omni's request, Sparks, a Poe & Brown insurance agent, delivered certificates of insurance stating that Omni's steel stored at Port Metal was covered under Port Metal's "all risk" bailee insurance policy. Sparks knew the request was made so that Omni could provide the certificate to its secured lender to prove that its steel was insured. Sparks also knew by mid–1993 that Port Metal charged Omni a storage fee for its metal stored at Port Metal, that goods for which Port Metal charged a storage fee were excluded by the terms of the bailee policy, and that that information was not contained on any of the certificates. Rather, the information on each of the certificates was, by Sparks' own admission, "untrue" and, by Poe & Brown's expert's admission "misleading."

While Tomes, Omni's president, testified at trial that he did not "personally read

and review every single certificate of insurance that came across to Omni" and that he did not ask for or "actually receive the insurance policy rather than the certificate of insurance," he also testified that he "just look[ed] at 'all risks' " and saw that the certificates sent him confirmed what McKnight, Port Metal's president, had told him and that nothing on the certificates gave him any reason to doubt McKnight. Tomes testified that the certificates would also have been reviewed by Debbie Hiner at Omni, that they were then forwarded to Omni's secured lender as proof that the steel was insured, and that "they were satisfied too." He stated that he did not ask for the policy because the company "would think that the certificate of insurance would be adequate to cover what we needed." In addition, Omni's president was assured that its steel was insured by Port Metal's president, McKnight, who had read the policy and who received the misinformation directly from Sparks in response to his question about the exclusion he saw in the 1992 bailee policy. That misinformation was never corrected by appellants prior to the fire that damaged Omni's steel.

Considering the evidence in the light most favorable to the jury's verdict, we hold that the evidence would enable reasonable and fair-minded people to find that Omni justifiably relied on Poe & Brown's negligent misrepresentation and that the negligent misrepresentation caused Omni's pecuniary damages, and therefore the evidence in support of these elements of Omni's claim was legally sufficient. *See Wilson*, 168 S.W.3d at 827. Considering and weighing all the evidence neutrally, we further hold that the evidence on these elements was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust and was thus factually sufficient. *See Arias*, 265 S.W.3d at 468.

We overrule the third part of Brown & Brown's first issue and Transcontinental's third issue.

### c. Poe & Brown's Knowledge

██ Brown & Brown also argues in its first issue that the evidence is legally and factually insufficient to support the jury's finding that Poe & Brown "knowingly" engaged in an unfair or deceptive act or practice, as required for an award of additional damages of up to three times actual damages under former article 21.21. *See* former TEX. INS.CODE art. 21.21, § 16(b)(1). Brown & Brown contends that it sends out thousands of certificates of insurance a week nationwide and that "[o]ther than Poe & Brown's 1995 certificate sent to Omni less than two (2) months before the December 5, 1995 fire, there is absolutely no evidence of any other communication between Omni and Poe & Brown."

The charge tracked the language of the DTPA in defining "knowingly" as

> actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

*See* TEX. BUS. & COM.CODE ANN. § 17.45(9). Actual awareness "means that a person knows that what he is doing is false, deceptive, or unfair" and does it anyway. *St. Paul Surplus Lines v. Dal–Worth Tank Co.*, 974 S.W.2d 51, 53–54 (Tex.1998). The term "knowingly" lies on a continuum of "gross negligence, 'knowingly,' 'willful' and intentional" with "gross negligence being the lowest mental state and intentional being the highest." *Id.* (quoting *Luna v.*

*N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex.1984)).

Here, the evidence shows that Sparks, Poe & Brown's agent, knew by at least July, 1993 that Port Metal's bailee policy excluded from coverage goods for which a storage charge was made. He also knew from approximately the same time that Port Metal received revenues from its customers of $6,000 a month for storage fees. He knew that Port Metal relied on him to obtain coverage for all of its customers' steel. Sparks also knew that Omni stored its steel at Port Metal and that Omni's request for a certificate of insurance was for the purpose of providing its secured lender assurance that the steel stored at Port Metal was covered by Port Metal's bailee policy. When Sparks sent the requested certificate to Omni stating that it covered "all risks," Sparks knew that representation was false and misleading. Indeed, on the day of the fire two months later, Sparks advised both Port Metal and one of its customers not to mention the word "storage" to anyone. None of this evidence is controverted.

Considering the evidence in the light most favorable to the jury's verdict, we hold that the evidence would enable reasonable and fair-minded people to find that Sparks, an insurance agent with Poe & Brown, knew that his representations to Omni that Port Metal's insurance policy covered "all risks" was false and misleading and that he knew Omni would rely on the false information to satisfy its own and its secured lender's concerns that the steel be insured. Thus we hold that the evidence in support of Poe & Brown's knowledge of its misrepresentation was legally sufficient to support the jury's finding. *See Wilson*, 168 S.W.3d at 827. Considering and weighing all the evidence neutrally, we further hold that the evidence regarding Poe & Brown's knowledge of the

misrepresentation was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, and thus it was factually sufficient. *See Arias*, 265 S.W.3d at 468.

We overrule Brown & Brown's first issue and Transcontinental's third issue.

**F. Additional Damages Awarded Omni**

In its fifth issue, Transcontinental argues that additional damages of $1,080,000 awarded Omni against Transcontinental are erroneous because Transcontinental had no contact with Omni and there is no evidence Transcontinental knew of any wrongful act, as required for an award of additional damages. On rehearing, Transcontinental re-urges and elaborates upon its argument from its original brief that an agent's knowledge cannot be attributed to its principal under the DTPA and the Texas Insurance Code.

Former article 21.21, section 16 of the Insurance Code permitted an award of additional damages of up to three times actual damages "[i]f the trier of fact finds that the defendant knowingly committed the acts complained of." Former TEX. INS. CODE art. 21.21, § 16(b)(1) (current version at TEX. INS.CODE ANN. § 541.152(b)). In its answer to question 3, the jury found that both Poe & Brown and Transcontinental had committed an unfair or deceptive act or practice by either "(1) representing that goods or services had or would have characteristics that they did not have; or (2) representing that an agreement confers or involves rights that it did not have or involve." In its answer to Question 5, the jury found that both defendants engaged in this conduct "knowingly." In its answer to Question 6, the jury found that Omni should be awarded $1,620,000 against Poe & Brown and $1,080,000 against Transcontinental because their conduct was committed knowingly. The issue presented by

Transcontinental is whether those damages can be attributed to a principal whose agent has made the misrepresentation.

■ The assessment of additional damages under former article 21.21, section 16 of the Insurance Code is not dependent on rules of common-law negligence but on the existence of corporate knowledge and therefore may be taken against a principal based solely upon the vicarious or imputed knowledge or intent of its agent. *Maryland Ins. Co. v. Head Indus. Coatings & Servs., Inc.,* 906 S.W.2d 218, 229–30 (Tex. App.-Texarkana 1995), *rev'd on other grounds,* 938 S.W.2d 27 (Tex.1996). Companies "are responsible for the knowledge possessed by those whom they appoint as agents." *See id.* at 229 (imputing to insurance company knowledge of terms of policy that should have been issued that was possessed by local recording agent).

In *Royal Globe,* the supreme court addressed "whether a misrepresentation about coverage afforded by a policy of insurance, made by the insurance company's local recording agent, is a deceptive trade practice [and insurance code violation] under Texas statutes for which the insurance company as principal is liable for treble damages." 577 S.W.2d at 689. The court held that an insurance company that authorizes an agent to sell its policies may not escape liability for misrepresentations made by the agent that violate section 17.46 of the DTPA or former article 21.21 of the Insurance Code merely by establishing that the agent had no actual authority to make the misrepresentation. *Id.* at 693. The insurance company can be found to have vicariously committed the deceptive act or practice. *Id.*

In *Celtic,* the supreme court reaffirmed the principle that "[a]n insurance company is generally liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority." 885

S.W.2d at 98. It stated that an insurer "cannot escape liability on the basis that it did not authorize particular representations concerning the policy." *Id.* at 99. The proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of the wrongful act. *Id.* (holding that misrepresentation made by agent in course of explaining terms of policy was within scope of his authority).

In *Maryland Ins. Co.,* the court, applying standard doctrines of agency under circumstances very similar to those in this case, held that "[t]he knowledge of the agent is the knowledge of the company itself" and that, therefore, the plaintiff "was entitled to a determination as a matter of law that the violation of the Insurance Code had been done knowingly." 906 S.W.2d at 228–29; *see also Ins. Co. of N. Am.,* 928 S.W.2d at 145 (deeming apparent authority of surety to make representations about quality of securities knowledge or acquiescence by principal); *Gros,* 818 S.W.2d at 913 (stating, "when State Farm's agent misrepresented coverage, that misrepresentation made her individually liable ... and that statement was also a misrepresentation by State Farm that made it liable as well"); *Lexington Ins. Co.,* 993 S.W.2d at 198 ("When an insurer's recording agent misrepresents coverage the misrepresentation is considered that of the insurer.").

Here, Sparks, an agent for Poe & Brown, Transcontinental's local recording agent, falsely represented that Port Metal's Transcontinental "All Risks" bailee policy covered Omni's steel stored at Port Metal. Sparks testified that he made a mistake by selling a policy that did not provide coverage to all Port Metal's customers because of the storage exclusion; he understood that Omni wanted the certificates to make sure that its steel at Port

Metal was covered; he knew by mid–1993 that the policy did not provide the coverage he promised because he know Port Metal charged a storage fee to some of its customers; he never made an inquiry into whose steel was being stored, even though he knew that it was his responsibility; and he never informed either McKnight or Omni of the exclusion despite knowing that there was a gap in the intended coverage and that he had a duty to inform McKnight of the exclusion. Sparks's statements to both Lykos and McKnight immediately after the fire, "[I]f anybody asks you, don't mention the word 'storage,'" confirmed his knowledge of the falsity of the representations.

We hold that, in knowingly misrepresenting the scope of Port Metal's bailee coverage, Sparks was acting within the scope of his duties as a Poe & Brown agent, and therefore his representations and the knowledge of their falsity are both attributable to Poe & Brown, his principal. In turn, Poe & Brown's knowledge of the falsity can be attributed to Transcontinental, its principal, which had appointed Poe & Brown as its recording agent with authority to make representations about the terms of the insurance policies it sold.

On rehearing, Transcontinental cites as support for its argument that Sparks's knowledge of the falsity of his representations cannot be attributed to Transcontinental the Texas Supreme Court's opinion in *Dal–Worth Tank* and two intermediate appellate court opinions, *The Woodlands Land Dec. Co., L.P. v. Jenkins*, 48 S.W.3d 415 (Tex.App.-Beaumont 2001, no writ) and *Connell Chevrolet Co. v. Leak*, 967 S.W.2d 888 (Tex.App.-Austin 1998, no pet.). None of these cases are availing. In each, additional damages were denied because there was no evidence that the agents knew their representations were false. That is not the case here. Rather,

the record affirmatively demonstrates that Sparks knew that his representations that Omni's metal stored at Port Metal was covered by Port Metal's "All Risk" bailee policy were false. Under *Dal–Worth Tank*, "objective manifestations [that] indicate that a person acted with actual awareness" of the falsity of his representations satisfy the standard for assessing additional damages under the DTPA and the Insurance Code. 974 S.W.2d at 53–54.

Because both Sparks and Poe & Brown were acting within the scope of their authority in representing that Port Metal's "All Risks" bailee policy covered Omni's stored steel, we hold that both Poe & Brown and Transcontinental could be held liable to Omni for damages under the DTPA and the Insurance Code. The jury found that the representations were false and that both Poe & Brown and Transcontinental acted "knowingly," and we have held that evidence in the record is sufficient to support these finding under both legal and factual sufficiency standards. Therefore, we hold that the trial court did not err in entering judgment on the verdict finding Transcontinental liable for additional damages for knowingly misrepresenting the coverage provided by Port Metal's bailee insurance policy in violation of the Insurance Code and the DTPA.

We overrule Transcontinental's fifth issue.

## G. Attorney's Fees and Costs Incurred in Prior Litigation

In its fourth issue, Transcontinental argues that Omni may not recover attorney's fees of $740,000 it incurred in pursuing a separate tort action against the third parties responsible for starting the fire. In its third issue, Brown & Brown joins in

and adopts Transcontinental's arguments as its own.[6]

After the fire in which its steel at Port Metal was damaged, Omni filed suit against Port Metal and the parties it alleged were responsible for the fire, Electrical Wire & Cable Company and others. Omni subsequently amended its pleadings to name Poe & Brown and Transcontinental as defendants. On January 9, 1998, the trial court entered its Supplemental Order on Severance, severing all actions against Poe & Brown and Transcontinental from the actions against the parties allegedly responsible for the fire. The instant appeal is taken from the severed action against Poe & Brown and Transcontinental. Omni contends that the litigation against the alleged responsible parties was prior litigation for which an equitable exception against wrongdoers applies that permits recovery of its attorney's fees.

Omni acknowledges that the general rule in Texas is that "attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties." *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 593 (Tex.1996); *see also Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1965). However, in *Turner*, the supreme court recognized, without adopting, an exception to the general rule provided for in the Restatement of the Law: Torts, Vol. 4 § 914. *Id.* at 234. The exception provides that "where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, the plaintiff may recover in a separate suit for his reasonable and necessary expenses of the prior litigation." *Id.* Certain prerequisites must, however, be met. *Id.* These include: (1) the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action, and (2) the litigation must have involved a third party and must not have been brought against the defendant in the same action in which the fees are sought. *Id.* (holding that section 914 did not cover case where, in cross-action, defendant former husband sought recovery from former wife of attorney's fees incurred defending alienation of affections suit brought against both).

Subsequent to *Turner*, this Court and other Texas courts of appeals have held that "equitable principles may allow the recovery of attorney's fees and other litigation expenses 'where a party was required to prosecute or defend the previous suit as a consequence of the "wrongful act" of the defendant.'" *Massey v. Columbus State Bank*, 35 S.W.3d 697, 701 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (awarding bank recovery of attorney's fees incurred in suit against former director for damages due to filing of false and defamatory complaints and groundless grievances with regulatory agencies); *see also Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90–91 (Tex.App.-Beaumont 1997, no pet.) (stating that "fees may be recoverable where the natural and proximate results and consequences of prior wrongful acts have been to involve a plaintiff in litigation with and against third parties and other parties" and holding that insured could recover attorney's fees incurred in prior litigation between insurer and insured as result of insurer's bad faith claim); *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838–39 (Tex.App.-Eastland 1984, no writ) (in third-party action brought by oil well operator against assignor lessee for contribution and indemnity, awarding oil well operator recovery of

---

**6.** Although this issue was raised in *Omni Metals*, it was not addressed by the Fourteenth Court of Appeals because it was not part of the parties' motion for summary judgment. 2002 WL 1331720 at *10.

attorney's fees incurred in defense of bad faith action for trespass to try title and conversion brought by assignee). However, our sister court, the Fourteenth Court of Appeals, has refused to adopt an equitable exception to the general rule. *See Martin–Simon v. Womack,* 68 S.W.3d 793, 797–98 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

Here, the trial court awarded Omni its attorney's fees incurred in an earlier stage of the instant litigation, which was brought initially against the parties allegedly responsible for the fire and to which appellants were added. After the settlement of Omni's claims against the other defendants, Omni's suit against Poe & Brown and Transcontinental was severed into a separate cause of action and tried and is now the subject of this appeal. The litigation for which fees were awarded can thus not properly be styled "prior litigation." Rather, it is a suit for recovery of fees incurred in the original cause of action from which this suit was severed after settlement of the causes of action brought against the other parties. Thus, the award violates the prerequisites for recovery of attorney's fees in the absence of a contractual or statutory provision set out in *Turner,* namely that the plaintiff must have incurred attorney's fees in the prosecution or defense of a prior action and that the litigation must have involved a third party and must not have been brought against the defendant in the same action in which the fees are sought. *Turner,* 385 S.W.2d at 234. We hold that, under the circumstances of this case, the general rule that attorney's fees may not be recovered unless such recovery is provided for by statute or by contract between the parties applies. *See Mayfield,* 923 S.W.2d at 593. It is undisputed that no statute or contract provided for the recovery of attorney's fees incurred by Omni in the prior stage of this litigation involving the settling defen-

dants. We hold, therefore, that the trial court erred in awarding Omni its attorney's fees of $740,000 under the equitable exception to the general rule.

We sustain Transcontinental's fourth issue.

## H. Settlement Credit

█ In its sixth issue, Transcontinental argues that the trial court erred in not giving it the full $1,660,000 settlement credit that Omni received from the settling defendants. In its fourth issue, Brown & Brown joins in and adopts Transcontinental's argument as its own. Specifically, Transcontinental argues that it is entitled to a credit for the full amount of the settlement under the one satisfaction rule. Omni argues that Transcontinental is not entitled to the full settlement credit because a non-settling tort-feasor may claim a credit only for damages for which all tortfeasors are jointly liable.

The trial court's judgment granted Poe & Brown and Transcontinental settlement credit against (1) the $704,267 awarded Omni by the jury for "the value of the loss less any amounts Omni received from the sale of the steel or from Transcontinental"; (2) the $370,964.72 awarded Omni by the jury for "reasonable and necessary expenses incurred in attempting to sell the steel"; and (3) $169,213.61 for prejudgment interest on the principal of (1) and (2) from December 13, 1996 through April 13, 1999. The total amount of the settlement credit granted was $1,244,445.33.

Transcontinental argues that it should have been granted a settlement credit for the entire amount of the settlement, $1,660,000. It argues that a dollar for dollar settlement credit is applied first to past damages and prejudgment interest that have accrued on the damages as of the time of the settlement. It states that

the damages in the case prior to settlement amounted to $1,075,231.72 for the steel and mitigation costs. The settlements for $1,660,000 were entered into on April 13, 1999. Using the 7% prejudgment interest rate used by the trial court and its accrual date of December 13, 1996, it argues that prejudgment interest that would have accrued on these damages as of the time of the settlement would be $175,690.06, or approximately $6500 more than the prejudgment interest credit granted it by the trial court.

Transcontinental argues that Omni's total recovery, after subtracting the $740,000 in attorney's fees damages and the $1,080,000 in additional damages, which Transcontinental contends were not properly recoverable against it, should have been $1,412,554.78, consisting of the $1,075,231.72 granted it as a settlement credit for past damages, plus $175,690.06 in accrued prejudgment interest at the time of the settlement, plus attorney's fees of $161,000 through trial, and costs of $633.00. Transcontinental argues that Poe & Brown was held jointly liable for these amounts. Therefore, since the total amount of recoverable damages was $1,412,554.78 after adjustments for the improper award of additional damages and past attorneys fees, Transcontinental argues that it is entitled to a settlement credit for the entire $1,660,000. Since the amount of the credit it contends it is due exceeds the total amount of the judgment against it, Transcontinental argues that judgment should be had in its favor.

Omni agrees that Transcontinental was entitled to a settlement credit for actual damages awarded by the jury for the loss on its steel inventory and the expenses of mitigating the damages, together with prejudgment interest on those amounts calculated through the date of the original settlements, April 13, 1999. But it contends that Transcontinental is not entitled to settlement credit for the $740,000 awarded as damages for litigation expenses Omni incurred in prior litigation due to Transcontinental's and Poe & Brown's wrongful actions and that Transcontinental is not entitled to a credit for the additional damages assessed against it for its knowing participation in violations of the DTPA and Insurance Code. It observes that "Texas law does not provide for such a credit." *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.002 (Vernon 2003).

The Texas Supreme Court has held that "[u]nder the one satisfaction rule, the non-settling defendant may only claim a credit based on the damages for which all tort-feasors are jointly liable." *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 391 (Tex.2000); *Garrett,* 860 S.W.2d at 78; *Paschall v. Peevey,* 813 S.W.2d 710, 712 (Tex.App.-Austin 1991, writ denied).

Here, Poe & Brown and Transcontinental were found jointly liable for actual damages of $704,267 for the value of the steel and $370,964.72 for mitigation damages; $740,000 in prior litigation attorney's fees; and $161,050.07 in attorney's fees, plus $50,000 for appeal to the Court of Appeals and $25,000 for appeal to the Supreme Court of Texas. The trial court awarded Poe & Brown a total settlement credit of $1,244,445.33, which did not include the $740,000 for prior attorneys fees. We have held that the $740,000 was improperly awarded to Omni. We have also held that the additional damages of $1,620,000 and $1,080,000 awarded Omni for Poe & Brown's and Transcontinental's violations of the DTPA were properly assessed separately against Poe & Brown and Transcontinental respectively and are not subject to settlement credit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 33.002; *Maryland Ins. Co.,* 906 S.W.2d at 230.

We hold that the trial court did not err in awarding settlement credit to appellants. We overrule Transcontinental's sixth issue and Brown & Brown's fourth issue.

## I. Admissibility of Prior Federal Judgment

In its seventh issue, Transcontinental argues that the trial court erred in not admitting evidence of a prior federal judgment in Transcontinental's favor over Omni's hearsay and irrelevance objections. Transcontinental states that it "sought to introduce this evidence to show that it could not have 'knowingly' refused to pay any amounts Omni was claiming, because a federal court had long ago ruled that it had no liability, even to its own insured, Port Metal."

The general rule in Texas is that a judgment in another cause finding a fact in issue in a case at bar is not admissible. *Davis v. Zapata Petroleum Corp.,* 351 S.W.2d 916, 922 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.). "The fact that another jury had theretofore, in another case, determined the very questions at issue in the present trial would have had a strong tendency to induce the jury in the subsequent case to reach the same conclusion, and would therefore have been very prejudicial. Such judgment, under well settled rules, could not have been introduced in evidence to establish the facts on which it was rendered." *Id.* While a judgment may be introduced to show its own existence, a judgment "is not admissible for the purpose of showing what matters were adjudicated except where the parties and the subject matter in each suit are the same, or where the matter determined was of a public nature (in rem) and from public considerations should be considered binding upon all persons." *Id.*

Here, Transcontinental has failed to show that the prior federal judgment was admissible. We hold that the trial court did not err in excluding it.

We overrule Transcontinental's seventh issue.

## CONCLUSION

We modify the judgment to deduct the $740,000 in attorney's fees damages awarded appellee Omni Metals, Inc. from appellants Transcontinental Insurance Company and Brown & Brown of Texas, Inc.

We affirm the judgment of the trial court as modified.

Justice NUCHIA, dissenting.

SAM NUCHIA, Justice, dissenting on rehearing.

While I vote to grant both motions for rehearing, I do not agree with the relief granted by the Court. I, therefore, respectfully dissent from the Court's judgment for the reasons set out in my December 17, 2009 dissenting opinion on motion for en banc reconsideration.